IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL A. COLEMAN,          )
          Plaintiff,     )
                         )
        v.             ) Civil Action No. 03-1895
                         ) District Judge Arthur J. Schwab
                         ) Magistrate Judge Lisa Pupo Lenihan
JOHN DOE WARD;VIVIAN KING;   )
PHILLIP L. JOHNSON; CAROL    )
SCIRE; TIM COLLINS; CAROL     )
DEWITT; TONYA EDWARDS; KIM    )
BABICH; DIANE DETWILDER;     )
SHERWOOD HUGHES; JOHN DOE     )
STORY; SGT. PETERS; SGT.      )
AUGUSTINO; SGT. ROUNDS;JOHN  )
DOE SCHULP; MARTIN F. HORN;  )
JEFFERY BEARD; TOM BENDER;   )
and WILLIAM BOWMAN,        )
               Defendants.   )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Defendants' Motions to Dismiss (doc. nos. 37 and 54) be granted and that the Complaint be dismissed in accordance with the Prison Litigation Reform Act, 28 U.S.C. §§ 1915A and 1915(e).

### II. REPORT

Plaintiff, Michael A. Coleman, originally commenced this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983 against the following Defendants:  Lynn Abraham, Philadelphia District Attorney; Catherine Marshall; Terri Domski; Lenora Clayton,

1

Philadelphia Assistant Public Defender; Barbara McDermott,
Philadelphia Assistant Public Defender; John Doe Ward, Chairman of
the Pennsylvania Board of Probation and Parole (the Board); Vivian
King, Parole Agent at SCI-Pittsburgh (SCIP); Phillip L. Johnson,
former Superintendent at SCIP; Carol Scire, former Deputy
Superintendent at SCIP; Tim Collins, former Deputy Superintendent
at SCIP; Carol DeWitt, former C-Block Unit Manager at SCIP; Tonya
Edwards, former Mail Department Supervisor; Kim Babich, former
Accountant at SCIP; Diane Detwilder, former Accountant Supervisor
at SCIP; Sherwood Hughes, former Correction Officer at SCIP; John
Doe Story, former Correction Officer at SCIP, Sgt. Peters, former
Correction Officer at SCIP; Sgt. Augustino, former Correction
Officer at SCIP; Sgt. Rounds, former Correction Officer at SCIP;
John Doe Schulp, former Correction Officer at SCIP; Martin F.
Horn, former Secretary of the Pennsylvania Department of
Corrections (DOC); Jeffery Beard, Secretary of DOC; Tom Bender,
former Record Department at SCIP; and William Bowman, C.R.S. at
SCIP.[1]

     Presently pending are motions to dismiss filed by all the
Defendants served with the Complaint(doc. nos. 37 and 54).  For

-------------------

   1.  Plaintiff filed this action originally in the United States
District Court for the Eastern District of Pennsylvania on
February 8, 2002.  On July 17, 2003, that Court dismissed the
Plaintiff's claims against Defendants Abraham, Marshall,
Domski, Clayton and McDermott as legally frivolous under 28
U.S.C. § 1915(e)(B)(i).

the reasons that follow, the motions should be granted and the Complaint should be dismissed for failure to state a claim upon which relief may be granted against those Defendants as well as the three Defendants who have never been served.

**A. Standards of Review**

1.   <u>Motion to Dismiss</u>

All Defendants with the exception of Vivian King, Carol Dewitt, and John Doe Schulp have filed motions to dismiss.[2] Pursuant to Fed. R. Civ. Proc. 12(b)(6), a motion to dismiss cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Conley v. Gibson</u>, 355 U.S. 41 (1957).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.  <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  The complaint must be read in the light most favorable to the plaintiff and all well-pleaded,

---

2.  The three Defendants that have not filed motions to dismiss have never been served with the complaint, however the claims against them will be addressed in this Report and Recommendation pursuant to the PLRA screening provisions.

material allegations in the complaint must be taken as true.

Estelle v. Gamble, 429 U.S. 97 (1976).[3]

    2.   PLRA Screening

In addition, in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody.  The authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims in that Act is applicable to this case.  Specifically, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such

---

    3.    In addition, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in considering a motion to dismiss under Rule 12(b)(6).  Pryor v. National Collegiate Athletic Ass'n., 288 F.3d 548, 560 (3d Cir. 2002) (noting that documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim and may be considered by the court in deciding a motion to dismiss); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

relief," the court must dismiss the complaint.  28 U.S.C. § 1915A(b).

Also, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed in forma pauperis (IFP), *i.e.*, without prepayment of costs.  Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding in forma pauperis and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA and the defendants are officers or employees of governmental entities.  In addition, Plaintiff has been granted leave to proceed in forma pauperis.  Thus his allegations must be reviewed in accordance with 28 U.S.C. §§ 1915A and 1915(e).  In reviewing complaints under 28 U.S.C. §§ 1915A and 1915(e), a federal court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).[4]

---

4.   *See, e.g.*, Anyanwutaku v. Moore, 151 F.3d 1053 (D.C. Cir. 1998); Mitchell v. Farcass, 112 F.3d 1483, 1484 (11th Cir. 1997); Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997)(applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)).

### B. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against the defendants under 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).  Because all of the Defendants acted under authority of state law with respect to their actions against Plaintiff, the only issue before the Court is whether Defendants' actions, if considered timely, resulted in a violation of Plaintiff's constitutional rights.

### C. Limitations Periods

Defendants first assert that Plaintiff's claims against them are untimely.  In section 1983 actions, the federal courts borrow the general personal injury limitations statute in the state where

the action arose.[5]  Under Pennsylvania law, the applicable
limitations period for civil rights actions asserted under 42
U.S.C. § 1983 is two years.  *See* 42 Pa. Cons. Stat. § 5524.

The date when a civil rights action accrues (begins to run)
is a matter of federal law.  Albright v. Oliver, 510 U.S. 266, 280
n.6 (1994) (J. Ginsburg, concurring).  A claim accrues when the
plaintiff becomes aware, or should have become aware, of both the
fact of injury and its causal connection to the Defendant.  *See*
Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is
the wrongful act that triggers the start of the limitations
period); Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1127 (3d
Cir. 1988) (a federal cause of action accrues when the plaintiff
is aware, or should be aware, of the existence of and source of
injury, not when the potential claimant knows or should know that
the injury constitutes a legal wrong).

Plaintiff's action was filed in the Eastern District on
February 8, 2002.  Due to the two-year limitations period,
Plaintiff cannot impose liability against Defendants under 42
U.S.C. § 1983 based on events that occurred prior to February 8,

---

5.  *See* Wilson v. Garcia, 471 U.S. 261, 272-76 (1985) (42
U.S.C. § 1983); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir.
1993) (Bivens.  *Cf.* King v. One Unknown Fed. Correctional
Officer, 201 F.3d 910, 913 (7th Cir. 2000) (noting that same
state statute of limitations applies to all Bivens and § 1983
claims).

2000.  Consequently, to the extent that Plaintiff's claims concern events that occurred prior to February 8, 2002, Defendants' motions to dismiss should be granted.

### D. Search and Seizure of Plaintiff's Property

Plaintiff raises several claims concerning the Defendants' actions in searching and seizing items in his prison cell.  First, he complains that Defendants violated his rights as protected by the Fourth Amendment.  However, the Fourth Amendment's proscription against unreasonable searches does not apply to a prisoner's cell or to prisoner's property.  *See* Hudson v. Palmer, 468 U.S. 517, 526 (1984) (holding that an inmate has no reasonable expectation of privacy in his prison cell entitling him to the protections of the Fourth Amendment).  Consequently, Plaintiff's allegations concerning his cell search and seizure of his property do not state a violation of his Fourth Amendment rights.  Thus, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's Fourth Amendment claims.

Plaintiff also claims that Defendants seized his property and sold it for their own benefit.  This claim alleges a violation of his procedural due process rights.  In this regard, the Due Process Clause of the Fourteenth Amendment prohibits the state from depriving an individual of life, liberty or property without due process of law.  Ordinarily, the concept of "due process"

- 8 -

requires some kind of hearing <u>before</u> the state can deprive a person of a protected interest. <u>Zinermon v. Burch</u>, 494 U.S. 113, 126 (1990) (collecting cases). However, in cases of random and unauthorized deprivations of property the State cannot predict when the loss will occur and, therefore, is unable to provide a meaningful hearing before the deprivation takes place. Thus, in <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), the Supreme Court determined that, with respect to negligent, random and unauthorized acts by state actors that result in the loss of a protected interest, a plaintiff does not suffer a violation of procedural due process if he or she has an adequate post-deprivation remedy. In <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), the Supreme Court extended the rule in <u>Parratt</u> to apply to intentional acts by state actors.

To the extent that he is alleging a procedural due process claim with respect to the alleged destruction of his property, Plaintiff's allegations fail to state a claim upon which relief may be granted because he had an adequate post-deprivation remedy available to protect his due process rights through the DOC administrative grievance procedures. DOC Policy Statement No. DC-ADM 804-1 contains the "Consolidated Inmate Grievance Review System" for inmates incarcerated in Pennsylvania state correctional institutions. The purpose of the grievance system is

to "establish policy . . . and to insure that inmates have an avenue through which resolution of specific problems can be sought."  DC-ADM 804 ¶ II.  The DOC grievance system provides three levels of review:  1) initial review by the Grievance Coordinator; 2) appeal of initial review to the Facility Manager or the Community Corrections Regional Director; and 3) final appeal to the Central Office Review Committee.

In <u>Hudson</u>, 468 U.S. at 536 n.15, the Supreme Court noted that an inmate grievance procedure would provide a meaningful post-deprivation remedy if available.[6]  Plaintiff had available a grievance procedure through which he could have raised his claim concerning his seized property.  A plaintiff's failure to avail himself of such remedy does not affect its adequacy under the <u>Parratt</u> doctrine as a post-deprivation remedy.  <u>Ramos v. Vaughn</u>, 1995 WL 386573, at *3 (E.D. Pa. June 27, 1995) (plaintiff did not file a grievance with respect to his claim of loss of property), *aff'd,* 85 F.3d 612 (3d Cir. 1996) (Table).  Moreover, the fact that an inmate is not successful in his grievance pursuit does not undermine the procedure's adequacy as a post-deprivation remedy.  *See, e.g.*, <u>Austin v. Lehman</u>, 893 F. Supp. 448, 454 (E.D. Pa. 1995).

---

6.  Apparently, in <u>Hudson</u>, the grievance procedures were implemented in 1982, after the unauthorized taking, which occurred in 1981 and, therefore, such procedures were unavailable to the petitioner in that case.

The federal courts in Pennsylvania repeatedly have held that DOC's grievance procedure is an adequate post-deprivation remedy for purposes of protecting due process rights.  *See* <u>Robinson v. Ridge</u>, 996 F. Supp. 447, 450 n.4 (E.D. Pa. 1997); <u>Pritchard v. Ridge</u>, 1997 WL 907564, at *2 (E.D. Pa. July 7, 1997), *aff'd*, 149 F.3d 1165 (3d Cir. 1998).  Because Plaintiff had an adequate post-deprivation state remedy, Defendants are entitled to judgment as a matter of law to the extent that Plaintiff is asserting a procedural due process claim regarding the confiscation of his non-legal property.

To the extent that Plaintiff asserts that Defendants confiscated his legal property, his claim asserts a violation of his right to access to courts as guaranteed by the First Amendment.  In <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), the United States Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.  However, in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996), the Supreme Court effectively repudiated much of its prior holding in <u>Bounds</u>.  In <u>Lewis</u>, the Supreme Court held that <u>Bounds</u> did not recognize an independent right of prisoners to have an adequate law library;

instead, it addressed the established right of access to the courts. Lewis 518 U.S. at 351. Thus, the Lewis Court held that, in order to successfully challenge a denial of this right of access to the courts, it is not enough for an inmate to establish that the law library provided was inadequate or he was denied access either to the law library or to legal materials; rather, he must establish that such inadequacies in the library or in accessing legal materials caused him actual harm.

In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Christopher, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can

ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope."  *Id*. The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation.  Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. *Id*. at 414.

Although Defendants did not address this issue in their motion to dismiss, it is clear from reviewing the Plaintiff's Complaint that he has failed to allege a viable claim for access to courts.  In this regard, Plaintiff failed to identify what court action was affected and what remedy may be awarded as recompense that would not be available in any other future litigation.  Thus, this claim should be dismissed pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A(b) and § 1915(e).

### E. Misconduct and Confinement in the RHU

Plaintiff's complaint also contains allegations concerning a misconduct and his subsequent confinement in the RHU.  Again, these allegations invoke the protections of the Due Process Clause.  Resolution of Plaintiff's claim is dictated by the United States Supreme Court's opinion in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  In <u>Sandin</u>, the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a

liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis added).

At issue in Sandin was whether the plaintiff's thirty-day detention in disciplinary custody in a Hawaii prison impacted any protectable liberty interest under the Fourteenth Amendment. The Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In finding that the prisoner's 30-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Supreme Court noted the following three factors: 1) the relatively short duration of the segregation; 2) the similarity between the conditions of confinement in disciplinary segregation and the conditions imposed upon other inmates; and 3) the lack of any direct collateral consequences affecting the length of the prisoner's underlying sentence. Applying this new test, the

- 14 -

Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence.

According to his allegations, as a result of his misconduct, Plaintiff received a total of 30 days of disciplinary custody. Employing the due process analysis announced in Sandin, the federal courts, including the United States Court of Appeals for the Third Circuit, have concluded that placement in restrictive confinement for periods of up to one year, and more, does not trigger a constitutionally protected liberty interest as it does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. *See, e.g.*, Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (holding that it was not atypical to be exposed to conditions of administrative custody for periods as long as 15 months as such stays are within the expected parameters of an inmate's sentence); Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) (upholding District Court's dismissal of prisoner's due process claim concerning seven months disciplinary detention).

Under this authority, this Court must conclude that Plaintiff's 30-day disciplinary detention did not impose an

atypical and significant hardship in relation to the ordinary incidents of his prison sentence sufficient to give rise to a protected liberty interest.  Accordingly, this claim should be dismissed.

Plaintiff also asserts that Defendants violated his constitutional rights by filing a false misconduct report, which resulted in his disciplinary custody in the RHU.  A prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest.  Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988).  In other words, the mere filing of false charges against an inmate does not constitute a *per se* constitutional violation.  *Id*.  Before the Supreme Court handed down its opinion in Sandin, the federal courts had determined that the filing of unfounded administrative charges against an inmate may result in a procedural due process violation only when such charges were not subsequently reviewed in a misconduct hearing.  *Id*. at 952 (an allegation that a prison guard planted false evidence fails to state a claim where the procedural due process protections as required in Wolff v. McDonnell are provided) (citation omitted).  Thus, even if false charges impaired a protected liberty interest, as long as prison officials granted the inmate a hearing and an opportunity to be

heard, the filing of unfounded charges did not give rise to a procedural due process violation actionable under section 1983. *Accord* Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002); Jones v. Coughlin, 45 F.3d 677 (2d Cir. 1995); Franco v. Kelly, 854 F.2d 584, 587 (2d Cir. 1988); McClean v. Seclor, 876 F. Supp. 695 (E.D. Pa. 1995).

In light of the Supreme Court's ruling in Sandin, however, Plaintiff has not even demonstrated that he had a constitutionally protected liberty interest that was offended by Defendants' actions in allegedly issuing false misconduct reports. Thus, it is unlikely that the filing of false charges, even in the absence of a misconduct hearing, would state a constitutional claim on the facts before this Court. *See* Strong v. Ford, 108 F.3d 1386 (Unpublished Opinion), 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of an atypical hardship on the inmate in relation to the ordinary incidents of prison life).

Here, however, Plaintiff was afforded a misconduct hearing and, thus, had the opportunity to confront and challenge the allegedly perjured testimony offered in support of the misconduct

- 17 -

report.  That is all he is entitled to under the Due Process
Clause.  <u>Smith</u>, 293 F.3d at 654.

### F. Violation of Mail Procedures

     Plaintiff makes numerous accusations that several Defendants
failed to properly handle his incoming and outgoing mail in
violation of statewide prisoner mail regulations.  Regulations in
and of themselves do not create a liberty interest in that
procedure.  *See, e.g.*, <u>Hewitt v. Helms</u>, 459 U.S. at 471 (mere fact
of careful procedural structure to regulate use of administrative
segregation does not indicate existence of protected liberty
interest); <u>McLaurin v. Morton</u>, 48 F.3d 944, 947 (6th Cir. 1995)
(mere procedures do not create any substantive liberty interest,
even when phrased in mandatory language); <u>Flick v. Alba</u>, 932 F.2d
728 (8th Cir. 1991) (BOP's Administrative Remedy Procedure does
not create a separate due process obligation); <u>Bostic v. Carlson</u>,
884 F.2d 1267, 1270 (9th Cir. 1989) (failure of prison officials
to comply with federal regulation requiring a disciplinary hearing
within eight days of alleged misconduct, resulting in disciplinary
segregation, does not alone constitute denial of due process);
<u>Culbert v. Young</u>, 834 F.2d 624, 628 (7th Cir. 1987) (the adoption
of mere procedural guidelines does not give rise to a liberty
interest), *cert. denied*, 485 U.S. 990 (1988).  Thus, failure to

- 18 -

follow DOC mail regulations does not, in and of itself, result in a violation of due process.

Assuming without deciding that Defendants violated the Department of Corrections mail procedures, a violation of prison policy alone does not give rise to section 1983 liability.  *See* Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) (no § 1983 liability for violating prison mail policy); Moore v. Rowley, 126 Fed. Appx. 759, 761 (8th Cir. 2005) (same).  Moreover, Plaintiff has not made any specific allegation to show that Defendants violated his constitutional right to receive mail or to access the courts.  As such, to the extent that this claim is timely, it should be dismissed.

### G. Verbal Harassment

Plaintiff further claims that Defendants called him a "rat" and verbally harassed him.  It has long been settled that mere threats and harassment do not amount to a constitutional violation.  *See* Adams v. Leaman, 156 F.3d 1228 (table), 1998 WL 466483 (6th Cir. 1998) ("It is well settled that mere threats, standing alone, do not rise to the level of a constitutional violation."); (Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (verbal harassment generally does not violate the Eighth Amendment); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (allegations of vulgarity did not state constitutional

claim); <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir. 1985);
<u>McFadden v. Lucas</u>, 713 F.2d 143, 146 (5th Cir.) (mere threatening
language and gestures of a custodial officer do not, even if true,
amount to constitutional violations), *cert. denied*, 464 U.S. 998
(1983); <u>Collins v. Cundy</u>, 603 F.2d 825, 826 (10th Cir. 1979)
(allegations that sheriff laughed at prisoner and threatened to
hang him did not state claim for constitutional violation);
<u>Wilson v. Horn</u>, 971 F. Supp. 943 (E.D. Pa. 1997) (verbal abuse and
harassment, although not commendable, does not rise to the level
of a constitutional violation), *aff'd*, 142 F.3d 430 (Table) (3d
Cir. 1998).  Moreover, there is no violation of a federal
protected constitutional right even if Defendants are alleged to
have made a racially disparaging remark.  <u>Morgan v. Ward</u>, 699 F.
Supp. 1025 (N.D.N.Y. 1988) (use of racial slurs do not support a
claim under the Eighth Amendment); <u>Williams v. Pecchio</u>, 543 F.
Supp. 878 (W.D.N.Y. 1982) (verbal harassment, including the use of
the term "nigger," does not support a section 1983 claim).

No matter, then, how reprehensible the conduct alleged in the
complaint may be, such conduct, if as alleged, is not violative of
rights secured to the plaintiff under the Constitution or the laws
of the United States.  Accordingly, this claim should be
dismissed.

### H. Personal Liability

- 20 -

Plaintiff also attempts to assert liability against several supervisory officials, *i.e.*, Defendants Ward, Horn and Beard.  To establish personal liability against a defendant in a section 1983 action, that defendant must have <u>personal</u> involvement in the alleged wrongs.  <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct). Personal involvement by a defendant can be shown by alleging either "personal direction or . . . actual knowledge and acquiescence."  <u>Rode</u>, 845 F.2d at 1207.  Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to <u>prevent</u> violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official <u>knowingly permits</u> a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach.  <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I).  However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval

to the offending subordinate." *Id.* (quoting <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986)). *See also* <u>Bonenberger v. Plymouth Township</u>, 132 F.3d 20, 25 (3d Cir. 1997). In order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinates' violations.[7]

In his Complaint, Plaintiff makes no allegations of personal involvement by Defendants Ward, Horn and Beard. Consequently, he has failed to state a claim upon which relief may be granted against these Defendants under 42 U.S.C. § 1983.

## I. Allegations Regarding Plaintiff's Plea and Sentence Calculation

Finally, Plaintiff makes various rambling allegations regarding a plea agreement and the proper calculation of his sentences. Resolution of these claims is dictated by the teachings of the United States Supreme Court as stated in <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 488-490 (1973), and subsequent cases interpreting that opinion. In <u>Preiser</u>, the plaintiffs were state prisoners who were deprived of good-time credits as a result of

---

7. *See* <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995); <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1478 (3d Cir. 1990).

disciplinary proceedings; they sought injunctive relief restoring their good-time credits, which would have resulted in their immediate release from confinement.  In making its ruling in Preiser, the Court was called upon to determine the proper relationship between the Civil Rights Act and the federal habeas corpus statute, 28 U.S.C. § 2254.  Despite the admitted "literal applicability" of § 1983 to the action before it, the Court concluded that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate or speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.*, 411 U.S. at 500.

Over two decades later, the Supreme Court again examined the relationship between the federal civil rights law and habeas corpus actions in Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the petitioner was convicted of voluntary manslaughter for killing his wife.  While his direct appeal was pending in the state courts, Heck filed a suit under 42 U.S.C. § 1983 against the prosecutors in his criminal action and various members of the state police department.  The complaint alleged that the defendants had engaged in an unlawful investigation and had knowingly destroyed exculpatory evidence.  Heck sought compensatory and punitive damages but did not seek injunctive

relief or release from custody.  After reviewing its origin and history, the Court determined that the civil rights law was not meant to provide a means for collaterally challenging the validity of a conviction through the pursuit of money damages. In so concluding, the Court announced the following rule.

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  <u>Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated</u>.

*Id*. at 486-87 (footnotes omitted) (emphasis added).

In order to succeed on his claim, this Court necessarily must conclude that his plea agreement has been breached and that his sentences have been wrongfully calculated.  To the extent that he still is serving his sentences and is seeking immediate release from prison because of Defendants' actions, he is precluded from

seeking such relief through a civil rights complaint because, under Preiser, a federal habeas corpus petition is his only available avenue for immediate release.  To the extent that Plaintiff is seeking monetary damages for the length of time he has been "unlawfully incarcerated," he is precluded from seeking such relief under the Supreme Court's pronouncement in Heck because a judgment in his favor necessarily would implicate the validity of his plea agreement.  As such, Plaintiff's section 1983 claim is not cognizable.[8]

### III. CONCLUSION

Based on the discussion above, it is respectfully recommended that the Defendants' Motions to Dismiss (doc. nos. 37 and 54) be granted and that the Complaint be dismissed in accordance with the Prison Litigation Reform Act, 28 U.S.C. §§ 1915A and 1915(e).

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections

---

8.  *See also* Mitchell v. Department of Corrections, 272 F.Supp.2d 464, 473 (M. D. Pa. 2003) (holding that the favorable termination rule of Heck, under which a state inmate must secure a determination of invalidity of his conviction or sentence before seeking § 1983 damages for unconstitutional conviction or confinement, applies to suits by prisoners who no longer are in custody, even though federal habeas relief no longer is available due to the prisoner's release).

shall have seven (7) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.


                                          /s/Lisa Pupo Lenihan

Dated December 2, 2005              Lisa Pupo Lenihan
                                    U.S. Magistrate Judge



cc:  Arthur J. Schwab
     United States District Judge

     Michael A. Coleman, EM-7191
     SCI-Houtzdale
     P.O. Box 1000
     Houtzdale, PA 16698-1000

     Craig E. Maravich
     Office of the Attorney General
     564 Forbes Avenue
     6th Floor, Manor Complex
     Pittsburgh, PA 15219